UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK W. WHITE JR.,

                                    Plaintiff,

            -against-

FELIX IKESHUKWU EZEKWE, et al.,

                                    Defendants.

**OPINION AND ORDER**

22-CV-04451 (PMH)

PHILIP M. HALPERN, United States District Judge:

Frank W. White, Jr. ("Plaintiff") initiated this action, *pro se*, on May 27, 2022 against Defendant Felix Ikeshukwu Ezekwe ("Ezekwe" or "Defendant") and Razia Ferdous ("Ferdous"). (Doc. 1, "Compl.").[1] This case was assigned to me on September 9, 2022 and I entered an Order of Service which, *inter alia*, dismissed all claims against Ferdous. (Doc. 7).[2] Plaintiff proceeds against Ezekwe, asserting medical claims under 42 U.S.C. 1983 that arose during Plaintiff's incarceration at Sing Sing Correctional Facility.

Pending before the Court is Ezekwe's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 24; Doc. 25, "Def. Br."). Plaintiff timely opposed the motion (Doc. 28; Doc. 26; Doc. 27, "Pl. Br."; Doc. 28). The motion was fully briefed with the filing of Ezekwe's reply. (Doc. 29, "Reply").

For the reasons set forth below, the motion to dismiss is GRANTED.

---

[1] Citations to the documents referenced herein correspond to the pagination generated by ECF.

[2] This decision is available on commercial databases. *See White v. Ezekwe*, No. 22-CV-04451, 2022 WL 4227096 (S.D.N.Y. Sept. 13, 2022).

## BACKGROUND

Plaintiff alleges that on April 30, 2019, Ezekwe treated Plaintiff for a hairline rash with "black tar shampoo for dandruff." (Compl. at 4). For the next month, Plaintiff continued to visit the medical unit to complain about the rash, when on May 31, 2019, the "black tar shampoo [Ezekwe prescribed to treat the rash] was burning his scalp especially around the hairline." (*Id.*). "Ezekwe [then] prescribed medicated shampoo called selenium sulfide." (*Id.*). On June 29, 2019, after Plaintiff applied the sulfide shampoo to his dreadlocks and scalp, he "immediately felt a burning sensation." (*Id.*). When Plaintiff washed the sulfide out, "his dreadlocks c[a]me away at the roots." (*Id.*). Plaintiff called for help and, after handing the sulfide bottle to an unnamed nurse, correctional staff "rushed" Plaintiff to Westchester Medical Center ("WMC"). (*Id.*). At WMC, the treating physician diagnosed Plaintiff with "a fungal infection of [t]he scalp which was irritated by medicated shampoo." (*Id.*). Plaintiff saw a dermatologist who prescribed treatment for the infection.

Plaintiff contends that he complained for "over 3 weeks for meds for burning scalp but was ignored." (*Id.*). He also alleges that in addition to suffering from headaches as a result of the sulfide treatment, he lost his dreadlocks, which he had "been growing for over 10 years [as] a part of the Rastafarian religion." (*Id.*).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL

3

3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## <u>ANALYSIS</u>

The Court construes the Complaint as asserting two medical claims under the Eighth Amendment: (1) Ezekwe delayed treating Plaintiff's fungal infection, which presented as a rash; and (2) Ezekwe inadequately treated the rash with sulfide shampoo, which resulted in Plaintiff's experiencing pain and losing his dreadlocks. Plaintiff, for the first time in his opposition, appears to argue also that Ezekwe violated his religious rights in violation of the First Amendment in that Plaintiff had lost his dreadlocks, which he had been growing for over 10 years as a part of the Rastafarian religion, as a result of the treatment provided.[3]

---

[3] Plaintiff pled the loss of his dreadlocks which he had grown as part of his religion in his Complaint. Plaintiff first noted in his opposition to Ezekwe's pre-motion letter that he had filed a grievance against Ezekwe for violating, *inter alia*, his First Amendment rights. (Doc. 22 at 3). The Court then permitted Plaintiff to amend his complaint (Doc. 23), but Plaintiff declined to do so. "A *pro se* plaintiff may not raise entirely new causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). Given the liberality afforded *pro se* litigants, the Court considers Plaintiff's First Amendment claim as it could have been asserted based on the facts alleged in the Complaint. Indeed, Plaintiff has not raised any additional allegations to support this new claim outside of the allegations contained in the Complaint.

Because Plaintiff alleges violations of his federal constitutional rights, the Court construes the Complaint as asserting claims under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  This language creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

I.      Eighth Amendment Claims

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must, *inter alia*, "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). As such, the Eighth Amendment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test, comprised of an objective component and a subjective component. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

5

The objective component requires that the alleged deprivation in medical care be "sufficiently serious." *Salahuddin*, 467 F.3d at 279. A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id*. at 279–80. The latter inquiry "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain"). When medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is not "the severity of the prisoner's underlying medical condition," but the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003); *see also Salahuddin*, 467 F.3d at 280 ("[T]he seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.").

The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). That is, the prisoner must state facts showing that the defendant "acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020).

"Where a medical professional inadvertently or negligently fails to provide adequate care, a prisoner cannot state a constitutional violation under the Eighth Amendment." *Curry v. Kim*, No. 22-CV-04127, 2022 WL 2702744, at *3 (S.D.N.Y. July 11, 2022) (citing *Estelle*, 429 U.S. at 106). A "mere disagreement over the proper treatment" is not actionable. *See Chance*, 143 F.3d at 703;

6

*see, e.g., Hill*, 657 F.3d at 123 (holding that medical officer who prescribed Motrin rather than stronger pain medication to treat a broken wrist did not have the "culpable state of mind" required to satisfy the subjective component of the deliberate indifference standard).

Plaintiff's claims of deliberate indifference fail to satisfy the objective component of the two-prong test. Courts in the Second Circuit have held that hair loss, itching, and other dermatological scalp issues are not sufficiently serious medical conditions for purposes of the objective prong of a deliberate indifference claim. *See LaTouche v. Rockland County*, No. 22-CV-01437, 2022 WL 953111, at *7 (S.D.N.Y. March 29, 2022) (finding hair loss, itching, and apparent ringworm on the scalp insufficient to constitute a sufficiently serious medical condition that satisfies the objective prong of a deliberate indifference claim); *see also Barnes v. Malavi*, 412 F. Supp. 3d 140, 143 (E.D.N.Y. 2019) ("[T]he Second Circuit and numerous district courts within this circuit have acknowledged that scabies and other similar skin conditions simply do not rise to the level of being sufficiently grave and serious to give rise to a deliberate-indifference claim.").

Plaintiff's complaints are that his scalp was "burning and peeling for months before, during, and after hair loss," that he suffers headaches, and that he lost his dreadlocks. (Compl. at 4-5). Plaintiff does not allege that his condition affected his daily activities—let alone affected them "significantly"—or that he experienced "chronic and substantial pain." *Chance*, 143 F.3d at 702. "Plaintiff's discomfort during the period of misdiagnosis . . . notwithstanding, his condition does not qualify as a serious medical need for the purposes of stating a claim under the Constitution." *Samuels v. Jackson*, No. 97-CV-02420, 1999 WL 92617, at *3 (S.D.N.Y. Feb. 22, 1999) (finding scabies causing open sores, abrasions, and scarring did not constitute serious medical need); *see also Hill v. Napoli*, No. 09-CV-06546, 2014 WL 1322476, at *15 (W.D.N.Y. March 31, 2014) (skin rashes, seborrhea on the scalp not a serious medical condition); *Guthrie v.*

*United States Fed. Bureau of Prisons,* No. 09-CV-00990, 2010 WL 2836155, at *5 (S.D.N.Y. July 7, 2010) (hair loss is generally not a serious medical condition).

Even if Plaintiff had established a serious medical condition, he has not shown that Ezekwe was deliberately indifferent to it. To the contrary, Plaintiff alleges that Ezekwe, during the alleged first sick call on April 30, 2019, assessed Plaintiff's complaints of rash and prescribed him a medicated black tar shampoo. (Compl. at 4-5). Ezekwe saw Plaintiff again on May 31, 2019 when Plaintiff complained that the black tar shampoo was burning his scalp, and prescribed a different medicated shampoo, selenium sulfide. (*Id.*). When Plaintiff complained that the medicated shampoo burned his scalp and caused his dreadlocks to "come away at the roots," he was instantly rushed to WMC and was also brought to a dermatologist on July 1, 2019, where he was prescribed "creams and ointments" to help relieve the burning and flaky scalp. (*Id.*). Plaintiff alleges that Ezekwe ordered Plaintiff medications on the very same day he is alleged to have been notified of Plaintiff's burning scalp. (*Id.*). Plaintiff does not allege that Ezekwe intentionally or knowingly delayed delivery of medication or appointments for Plaintiff. Rather, Plaintiff pleads that Ezekwe attempted to provide Plaintiff with adequate medical care by providing him with multiple types of medicated shampoos to help relieve his symptoms, and when those mediated shampoos did not work, he sent Plaintiff to a dermatologist and later ordered medication for the pain and burning on the scalp.

Plaintiff has alleged, at most, the existence of a difference of opinion between Plaintiff and Defendant, or conceivably negligence on the part of Defendant. *See Sledge v. Kooi*, No. 04-CV-01311, 2007 WL 951447, at *6 (N.D.N.Y. Feb. 12, 2007), *adopted by*, 2007 WL 969576 (N.D.N.Y. Mar. 28, 2007), *aff'd*, 564 F.3d 105 (2d Cir. 2009). "[E]ven if true, such a difference of opinion, or such negligence, would not be enough to render Defendant liable to Plaintiff under the

Eighth Amendment. *Id*.; *see also Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Estelle*, 429 U.S. at 106 (A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Accordingly, Defendant's motion to dismiss Plaintiff's Eighth Amendment claims of deliberate indifference is granted.[4]

II.    First Amendment Claim

Plaintiff also alleges that his First Amendment religious rights were violated by Ezekwe prescribing selunium sulfide shampoo which caused Plaintiff to lose his dreadlocks. "The religion clauses of the First Amendment, applicable to the states through the Fourteenth Amendment,

---

[4] Defendant also argues that Plaintiff's claims that arose on April 30, 2019 are time-barred. The statute of limitations for § 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). In New York, that period is three years. See N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Plaintiff alleges that he first visited the medical clinic on April 30, 2019, and complained throughout the month of May 2019, until he received the sulfide shampoo on May 31, 2019. The continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999).

> It applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [ ] practice.' *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. *Morgan*, 536 U.S. at 114-115.

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). The delay in providing care arguably accrued at the end of that delay, not the beginning. Thus, when Plaintiff finally visited the clinic on May 31, 2019, which is within the three-year time period to file this complaint, and Ezekwe prescribed the sulfide shampoo, the over-three-week delay accrued. This discussion is academic, however, given the Court's rulings herein.

provide that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Kravitz v. Purcell*, --- F.4th ----, 2023 WL 8177114, at *4 (2d Cir. Nov. 27, 2023). Alleged violations of the right to free exercise, in the prison context, are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)). Accordingly, a prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests. *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989). "In short, to assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 2023 WL 8177114, at *11.

Plaintiff alleged in the Complaint that he grew his dreadlocks as a part of his Rastafarian religion and that he lost all his dreadlocks "at the roots" due to the treatment provided. (Compl. at 4-5). The Court thus accepts for purposes of this motion that Plaintiff has pled that his sincere religious beliefs were burdened. Courts have held, however, that providing incarcerated individuals with medical treatment is a legitimate penological interest. *See Michael v. Perez*, No. 16-CV-07850, 2017 WL 5991794, at *2 (S.D.N.Y. Dec. 1, 2017) ("The facts as alleged show [defendant] disclosed the medical information in the course of providing emergency medical treatment to an inmate, a legitimate penological interest"); *Swinson v. City of New York*, No. 19-CV-11919, 2022 WL 142407, at *8 (S.D.N.Y. Jan. 14, 2022) (holding that prison officials had legitimate penological interest in conducting the medical examinations in the manner described by

plaintiff). Here, because there existed a legitimate penological interest in providing Plaintiff with medical treatment, a free exercise claim fails.

Moreover, to establish a defendant's individual liability in the context of the Free Exercise Clause, the defendant must have acted "with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice." *Kravitz*, 2023 WL 8177114, at *12. Plaintiff has not alleged that Ezekwe was even aware of Plaintiff's Rastafarian religious beliefs or that he maintained dreadlocks for religious purposes. As discussed *supra*, the allegations against Ezekwe at most amount to negligence in causing Plaintiff to lose his deadlocks, which is insufficient to maintain a First Amendment claim against him. Negligent infringement of a prisoner's right to religious freedom is not actionable under the First Amendment. *See Hamilton v. Countant*, No. 13-CV-00669, 2016 WL 881126, at *4 (S.D.N.Y. March 1, 2016) (colleting cases).

Accordingly, to the extent Plaintiff pleads a violation of his First Amendment rights, that claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.[5]

Although "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint," it is "not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The parties, prior to the instant motion practice, exchanged letters concerning the deficiencies in the pleading raised by Defendant pursuant to the Court's Individual Practices and Plaintiff advised Defendant that he intended to stand on his pleading. (Doc. 20). The Court thereafter expressly

---

[5] In light of the conclusions reached herein, the Court need not and does not address Defendant's argument regarding qualified immunity.

permitted Plaintiff the opportunity to amend his pleading (Doc. 23) and he elected not to do so. In any event, the Court dismisses the claims alleged in Plaintiff's Complaint with prejudice as any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 24, close this case, and mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated: White Plains, New York
       December 11, 2023

_____
Philip M. Halpern
United States District Judge